UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
SEAN R. RAYMOND, SR.,  :
                         Plaintiff,  :
     -against-  :      MEMORANDUM DECISION
                                                  AND ORDER
1199SEIU NATIONAL BENEFIT FUND,  :      20 Civ. 10380 (GBD) (GWG)
                       Defendants.  :
------------------------------------------x

GEORGE B. DANIELS, United States District Judge:

    Plaintiff Sean R. Raymond, Sr. ("Raymond") brought this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112–17, against Defendant 1199 SEIU National Benefit Fund ("NBF"). (Compl., ECF No. 1.) Raymond alleged that NBF unlawfully failed to accommodate his disability and terminated his employment due to his disability. *Id.* Before trial, this Court granted NBF summary judgment on the failure-to-accommodate claim; thus, only the wrongful-termination claim proceeded to trial. (Mem. Decision and Order, ECF No. 53.) At the conclusion of a five-day trial, a jury returned a verdict for NBF upon finding that Raymond did not prove by a preponderance of the evidence that he had been discriminated against in violation of the ADA.

    Raymond now moves for a new trial pursuant to Federal Rule of Civil Procedure 59. (Mot. for New Trial ("Mot."), ECF No. 143.) Raymond's motion is DENIED.

## I.    BACKGROUND

    Raymond was a long-time employee with NBF. In 2003, he entered the Outreach Department and eventually became an Outreach Coordinator, which required traveling to each of an assigned group of healthcare facilities to speak with union members. (Trial Tr., ECF Nos. 131, 133, 135, 137, 139, at 141:2–6, 255:11–13, 256:3–7.) Raymond was originally responsible for part of Area J; his assignment

1

encompassed facilities that Raymond estimated required about a half-hour commute from his home. (*Id.* at 148:3–6.) In 2010, Raymond developed deep vein thrombosis and post-phlebitic syndrome, which rendered him prone to developing blood clots that could cause a pulmonary embolism. (*Id.* at 66:22–68:14.) In 2015, he suffered a pulmonary embolism. (*Id.* at 268:11–15.) He returned to work after six months of leave. (*Id.* at 151:10–12.)

Then, in 2017, NBF restructured its assignment areas after losing an Outreach Coordinator. (*Id.* at 499:17–502:2.) As part of this restructuring, Raymond was assigned to a new area, Area I. (*Id.*) The previous two parts of Area J were combined and assigned to a different coordinator. (Trial Tr. at 500:1–502:2.) Raymond raised concerns regarding parts of this new assignment and provided NBF with a doctor's note that instructed him to "avoid prolonged walking, standing, sitting, driving, and squatting." (*Id.* at 503:11–18, 547:13–548:5.) In response, NBF accommodated his concerns by reassigning the four farthest facilities in Area I. (Pl.'s Ex. 3.[1]) Raymond worked this modified Area I for six months without interruption. (Trial Tr. 622:22–623:12.)

After these six months, Raymond provided another doctor's note to NBF that "strongly recommend[ed] that [Raymond] should absolutely avoid prolonged continuous standing, walking, sitting or driving without elevating his legs for more than thirty minutes continuously." (Pl.'s Ex. 4.) Raymond expressed to NBF that he no longer wanted to work Area I; on a contentious phone call with the Assistant Director of Human Resources at NBF, Raymond stated that "he wanted his old assignments back, and he wasn't going to work his new assignments." (Trial Tr. 56:9–11, 581:7–8.) Raymond made no other suggestions for possible alternative assignments that would be more feasible for him to serve. (*See id.* at 581–83.) The Assistant Director explained to Raymond that there "was not a significant difference" in the driving distance between the modified Area I and his old assignments. (*Id.* at 581:19–22.) He also

---

[1] Unless otherwise indicated, citations to exhibits refer to exhibits attached to the parties' respective motions, listed in ECF Nos. 145 and 147.

explained that there was nothing preventing Raymond from taking as many breaks as he needed while on his route, no matter which Area he was servicing—which Raymond conceded at trial. (*Id.* at 354:21–357:4, 582:11–20.) Despite being told that he was allowed to take breaks and that there were no existing alternatives that would require less driving, Raymond continued to insist that he get his old assignments back. (*Id.* at 582:19–20.)

Raymond then went on short-term disability leave. (Trial Tr. 583:19–584:5.) When he was scheduled to return in 2019, Raymond provided NBF with a third doctor's note that cleared him to "return to work with strict instructions of performing only light duties, including no prolonged driving or sitting of more than thirty minutes." (Pl.'s Ex. 6; Trial Tr. 565:7–15, 583:6–9, 593:10–594:18.) Ultimately, NBF informed Raymond that he would not be able to return to work with "these restrictions," given that many of the facilities were an hour or more from his home. (*See* Pl.'s Ex. 7, 15.) Raymond confirmed that he would not be able to return to his assigned job without these restrictions, then asked for his options "if [his] reasonable accommodations request [was] not approved" in time for him to return to work." (Pl.'s Ex. 9, 14.) NBF explained that he would need to apply for long-term disability if he was unable to return to work. NBF terminated Raymond's employment shortly after. *Id.*

At trial, this Court instructed the jury as to each element of an ADA claim. (Trial Tr. 857:7–860:18.) The jury returned a verdict in favor of NBF, finding that Raymond did not prove by a preponderance of the evidence that, under the ADA, NBF discriminated against Raymond by terminating his employment because he was disabled. (*Id.* at 870:9–13.)

## II. LEGAL STANDARD

The decision to grant a motion for new trial, pursuant to Federal Rule of Civil Procedure 59(a), rests within the sound discretion of the district court. *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 143 (2d Cir. 1998). Such a motion should not be granted unless the court "is convinced that the jury has reached

3

a seriously erroneous result or that the verdict is a miscarriage of justice." *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 82 (2d Cir. 2006) (internal citations omitted); *see DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998) (stating that a court should only grant such a motion when the jury's verdict is "egregious") (citing *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 158 (2d Cir. 1992)). "Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict." *DLC Mgmt. Corp.*, 163 F.3d at 134. The court may independently weigh the evidence and, in doing so, need not view the evidence "in the light most favorable to the verdict winner." *See Martin v. Moscowitz*, 272 F. App'x 44, 47 (2d Cir. 2008) (citing *DLC Mgmt. Corp.*, 163 F.3d at 134).

In order to support a finding of liability under the ADA, Raymond had the burden of proving each of the following elements by a preponderance of evidence: (1) he was or was perceived by his employer to have a disability; (2) that he was a qualified individual, able to perform the essential functions of the job; and (3) that NBF discriminated against Raymond by terminating his employment because of that disability. (Trial Tr. 857:11–19); *see Kinneary v. City of New York*, 601 F.3d 151, 155–56 (2d Cir. 2010); 42 U.S.C. § 12112.

### III. THE JURY'S VERDICT WAS NOT SERIOUSLY ERRONEOUS

There was sufficient evidence introduced at trial to support the jury's verdict that Raymond was not terminated due to his disability.

#### A. Raymond's Proposed Accommodations

The parties contest whether Raymond proposed reasonable accommodations under the ADA. In essence, Raymond argued at trial that NBF could have reasonably accommodated him by either providing him with an assignment that only included "routes under thirty minutes," or one that allowed

4

him to "easily pull over for breaks." (Rep. at 4; *see id.* at 1, 5.) The jury had sufficient evidence to find against Raymond on both these points.

First, there was no evidence that any existing available assignment area included only routes less than thirty minutes from Raymond's home. At trial, Raymond argued that NBF should have reassigned the problematic stops in Area I, reassigned Raymond to his previous assignment (part of Area J), reassigned Raymond to all of Area J, or created a hybrid Area I. (Mot. at 12–13.) But the jury did not find that any of these proposed alternatives were reasonable accommodations. NBF had already reassigned four of the farthest stops in Area I, and Raymond made no effort to identify any specific locations in Area I that were problematic. Raymond's previous assignment, part of Area J, no longer existed as a possible assignment at the time of his employment dispute. There was also no evidence presented that all of Area J, or even a hybrid Area I, covered any shorter distances than the existing Area I.[2] In fact, NBF explicitly informed Raymond that there "was not a significant difference" in the driving distance between the modified Area I and his old assignments. Raymond was insistent on his previous route. (*Id.* at 581:19–22; *see* Opp. at 10.)

Moreover, NBF was not required to reassign other coordinators or "create" new areas to accommodate Raymond's restrictions. NBF was not required "to create a new position or to eliminate an essential function of a job, as these are not considered reasonable accommodations." *Clark v. Coca-Cola Beverages Ne., Inc.*, No. 20-4040-CV, 2022 WL 92060, at *3 (2d Cir. Jan. 10, 2022). Moreover, in this Circuit, "a plaintiff bears the burden of establishing that a vacancy existed into which [the plaintiff] might have been transferred." *Needle v. Alling & Cory, Inc.*, 88 F. Supp. 2d 100, 106–07 (W.D.N.Y. 2000). In other words, NBF did not have to reassign its other Outreach Coordinators or

---

[2] The only evidence Raymond presented on this point was his testimony that his original assignment—half of Area J—contained shorter routes. (*See* Trial Tr. 193:12–16.) But, again, that assignment no longer existed.

create a new vacancy for Raymond to move into. Finally, there is no evidence that Raymond suggested any of these other argued accommodations to NBF, besides returning to his original assignment, which was no longer available. Thus, it was reasonable for the jury to conclude that any of Raymond's proposed reassignments, both of himself and other coordinators, were not reasonable accommodations for NBF to make. NBF had already attempted to accommodate Raymond in accordance with its legal duty when it removed from his route the four farthest facilities in Area I.

Raymond also argues that NBF could have reasonably accommodated him by ensuring that he had the ability to take breaks every half an hour. But NBF presented ample evidence at trial demonstrating that Raymond was, in fact, already able to take breaks whenever he needed to. Indeed, Raymond himself testified that there was no NBF rule or policy preventing him from pulling off the highway to take breaks, and that he could have left earlier to ensure that he had enough time to do so. (*See, e.g.*, Trial Tr. 354:21–357:4, 582:11–20.) Raymond argued at trial that this was inconvenient because traffic could be much worse by the time he resumed driving; however, the jury was free to conclude that those arguments at trial were insufficient to render this a nonexistent or unreasonable accommodation, or demonstrate discriminatory animus on the part of NBF.

### B. NBF's Termination of Raymond

Raymond argues that the evidence at trial unequivocally showed that he was terminated by NBF because of his disability, in violation of the ADA. (Mot. at 14–16.) Raymond is correct that "terminating an employee because they cannot return to work without restrictions"—in other words, maintaining a "100% healed" policy—"is a per se violation of the ADA." (*Id.* at 14–15.) But the evidence did not support a finding that NBF actually had or enforced such a policy. In fact, NBF points out that Raymond was previously allowed to return to work while disabled because the accommodations NBF offered were more workable. (Opp. at 15.) It was reasonable for the jury to find that NBF did not

6

require Raymond to return without *any* reasonable restrictions or accommodations by crediting NBF's arguments and evidence over Raymond's.

Most importantly, the evidence showed that NBF *did* attempt to accommodate Raymond's prolonged-driving restriction by removing the four farthest stops on his Area I route. And, as discussed above, Raymond presented no evidence that his proposed accommodations, including the full Area J or a "hybrid" Area, would have required less driving time than Area I. He also did not propose any other viable alternatives to NBF; instead, in his conversations with NBF, he insisted that he would only drive his "old assignment"—that is, the half of Area J that no longer existed as a plausible assignment. (Trial Tr. 56:9–11, 501:1–502:2, 581:7–8, 582:19–20.) There was sufficient evidence at trial for the jury to conclude that NBF was not legally obligated to construct any alternate assignments not proposed at that time.

On this record, the jury reasonably concluded that NBF's unwillingness to guarantee that Raymond would not have to drive more than thirty minutes at a time was not evidence of NBF's discriminatory animus against the disabled—and that NBF was in fact motivated by legitimate business judgment regarding the assignment and allocation of its workforce. Thus, it was not unreasonable for the jury to conclude that NBF fired Raymond not because of his disability, but because he was unwilling or unable to do his assigned job, to service the modified Area I, after NBF had already attempted to reasonably accommodate his physical limitations.

## IV.    RAYMOND'S RULE 59(e) MOTION IS DENIED

Finally, Raymond moves, under Rule 59(e), to alter or amend this Court's prior grant of summary judgment on Raymond's failure-to-accommodate claim. (Mot. at 16–17.) The standard governing a motion to alter or amend a judgment pursuant to Rule 59(e) is identical to that governing a motion for reconsideration pursuant to Local Civil Rule 6.3. *Sullivan v. N.Y.C. Dep't of Investigation*, No. 12-CV-

2564, 2016 WL 7106148, at *3 (S.D.N.Y. Dec. 6, 2016) (quoting *Henderson v. Metro. Bank & Tr. Co.*, 502 F. Supp. 2d 372, 375 (S.D.N.Y. 2007)). Both Rule 59(e) and Local Civil Rule 6.3 "are meant to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" *In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16-CV-740, 2018 WL 3632500, at *1 (S.D.N.Y. July 30, 2018) (citation omitted). "[T]he standard for granting . . . a [Rule 59(e)] motion is strict," and is met only if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted). "Accordingly, motions that 'simply regurgitate the arguments that this Court previously rejected' should be denied." *Prout v. Vladeck*, 319 F. Supp. 3d 741, 744 (S.D.N.Y. 2018) (citation omitted).

Here, Raymond does not demonstrate that this Court overlooked any controlling decisions or factual matters in its summary judgment decision. He does not point to any specific evidence or data that was newly introduced at trial or went unconsidered at summary judgment; instead, he makes only broad legal arguments that this Court has duly rejected. In fact, the only specific exhibit he cites in this motion is an exhibit that this Court explicitly considered in its summary judgment opinion. (*See* Mot. at 16–17; Mem. Decision and Order, ECF No. 53, at 14. *Compare* Pl.'s Ex. 21 *with* Hurley Ex. M, ECF No. 42-13.[3]) Moreover, Raymond's motion does not identify any specific accommodation that he requested from NBF that he did not present to this Court in his summary judgment briefing or at oral argument. In other words, he does not present to this Court any new information or evidence that this Court did not already consider at summary judgment.

---

[3] The exhibit in question is a 2019 email chain among NBF employees and Raymond, discussing Raymond's concerns with returning to work after his leave.

8

Notwithstanding the above, this Court properly decided that there was no genuine issue of material fact as to Raymond's failure-to-accommodate claim. This Court will not rehash its summary judgment decision here, but will reiterate that Raymond's failure-to-accommodate claim failed because, *inter alia*, NBF accommodated Raymond throughout their employment relationship, most notably by reassigning his four farthest facilities in Area I. Moreover, Raymond has presented no evidence that he proposed any specific accommodation to NBF during his employment besides going back to his old assignment—an Area that no longer existed.

## V. CONCLUSION

Plaintiff's motion for a new trial is DENIED. The jury's verdict was not seriously erroneous or unsupported by the evidence. The Clerk of Court is directed to close the motion at ECF No. 143.

Dated:
    New York, New York
    **FEB 2 4 2025**

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge